[Civ. No. 26427. First Dist., Div. Two. June 1, 1970.]

LIBERTY MUTUAL INSURANCE COMPANY,
Plaintiff and Respondent, v.
COLONIAL INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Carroll, Davis, Burdick & McDonough, Carroll, Burdick & McDonough and Richard B. McDonough for Plaintiff and Respondent.

Mullally & McCorkindale and Lawrence E. Mullally for Defendant and Appellant.

## OPINION

AGEE, J.—In this declaratory relief action defendant, Colonial Insurance Company (hereafter "Colonial"), appeals from a judgment against it and in favor of plaintiff, Liberty Mutual Insurance Company (hereafter "Liberty"), based upon the holding that Colonial was the primary insurer and Liberty was only the excess insurer of the personal injury claim of one Johnson.

On December 17, 1962 Johnson drove a truckload of steel onto the premises of the Butler Manufacturing Company (hereafter "Butler Co."). During the unloading process he sustained personal injuries when a portion of the load fell on him.

Johnson was the employee of an independent hauling contractor engaged by the consignor, Columbia-Geneva Steel Company, to haul the steel to the premises of Butler Co. There was no contractual or business relationship between the hauling contractor and Butler Co.

A crane being used to assist in unloading the truck was owned and operated by Butler Co. and was permanently affixed to Butler's premises by an overhead rail track. This equipment was not and could not be used on a public highway nor could it in any sense be considered as a motor vehicle under the Vehicle Code.

Liberty had issued to Butler Co. a "Comprehensive General Liability Policy" insuring it for damages caused by bodily injury sustained by any person on its premises.

■ Liberty had also issued to Butler Co. an "Automobile Policy" which contained a clause entitled "OTHER INSURANCE." This clause covers *two* different situations. The first is as follows:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater *proportion* of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss;" (italics added). The Colonial policy contains an identical provision.

The second situation provided for in the Liberty policy is as follows: "provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis *or* the use of any non-owned automobile shall be *excess* insurance over any other valid and collectible insurance." (Italics added.)

Colonial erroneously takes the position that the "excess" provision quoted above cannot apply unless the vehicle involved was insured by Liberty "on a cost of hire basis." This overlooks the fact that the "excess" provision can and does also apply to "the use of any non-owned automobile."

The trial court expressly found that "It is true that the said truck was not owned by or hired by Butler Manufacturing Company or its employees." This finding is supported by substantial evidence. It therefore follows that Liberty's "Automobile Policy" is excess insurance in the instant situation.

Colonial had issued to the hauling contractor an "Automobile Insurance Policy" specifically describing the truck and covering liability for bodily injuries caused by the operation of the truck.

There is no contention that the unloading of the truck was not a part of the operation of the truck or that the Butler Co. employees who assisted in such unloading were not additional insureds within the terms of the Colonial policy.

Johnson filed a personal injury action against Butler Co. and certain of

its employees, including one Klatt, the operator of the crane at the time of the accident to Johnson. (This action is hereafter referred to as the Johnson action.)

Liberty employed attorneys who undertook the defense of this action during the pleading stage, Colonial having refused to do so. Prior to trial Liberty again tendered the defense thereof to Colonial, which continued its refusal to participate in the action or defend it. No explanation for such refusal was given by Colonial.

On June 22, 1964, during the ensuing trial of the Johnson action, the attorneys for Johnson and the attorneys employed by Liberty to represent defendants Butler Co. and three of its employees, Crain, Sweet and Klatt, stipulated in open court to a judgment against them and in favor of Johnson in the sum of $75,000.

The court signed and filed its formal judgment on June 23, 1964, in which the following express finding is made: "[T]he court specifically finds that the plaintiff has suffered severe and permanent injuries and has sustained damages as a result of *the accident described in the complaint*." (Italics added.) Liberty satisfied the judgment in full on June 25, 1964.

The accident is described in the complaint as follows: "that at said time and place [i.e., premises of Butler Co.], defendant, Butler Manufacturing Company, a corporation, by and through its employees, . . . [1] so negligently and carelessly *maintained the area* where plaintiff was obliged to park his tractor and trailer for unloading purposes and [2] so negligently and carelessly *managed,* supervised, controlled and directed *the unloading* of said trailer as to cause said sheet steel to fall from said trailer and upon the body of plaintiff . . . ." (Italics added.)

Thus, the complaint describes an accident that was caused by *either or both* of two factors, (1) the negligent and careless *maintenance* by Butler Co. of the area where Johnson was obliged to park his tractor and trailer in order to unload and (2) the negligence and carelessness by Butler Co. and its employees in the management, supervision, control and direction of the *unloading* of the steel.

Liberty is the primary insurer if negligent maintenance of the premises was *the* proximate cause of the accident. Colonial is the primary insurer if the negligent manner of unloading the steel was *the* proximate cause of the accident. If *both* were the proximate causes of the accident then both Liberty and Colonial are jointly and equally liable to Butler Co. as primary insurers. Under these circumstances we think that each is a concurrent primary insurer of Butler Co.'s liability to Johnson.

*Statute of Limitations.*

Colonial's contention that the statute of limitations applicable to Liberty's claims against it is the two-year period prescribed by Code of Civil Procedure section 339, subdivision 1, is without merit.

The law is that the period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. (*Maguire* v. *Hibernia S. & Loan Soc.,* 23 Cal.2d 719, 734 [146 P.2d 673, 151 A.L.R. 1062]; *Tostevin* v. *Douglas,* 160 Cal.App. 2d 321, 330 [325 P.2d 130].)

The nature of the instant action is not only to determine the "rights and duties" (Code Civ. Proc., § 1060) of Colonial *under its contract of insurance* but also to recover the damages sustained by Liberty as the result of Colonial's alleged breach of such duties.

Section 337, subdivision 1, of the Code of Civil Procedure provides in pertinent part that the period for the commencement of "An action upon any contract, *obligation* or liability *founded upon an instrument in writing,*" is within four years. (Italics ours.) The action commenced by Liberty is founded upon an instrument in writing, i.e., Colonial's insurance policy.

Colonial contends that Liberty's claim is "based upon an implied contract of indemnification and should have been brought within the two year period set forth in Section 339(1) of the Code of Civil Procedure."

A similar contention was held to be without merit in *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 662 [328 P.2d 198, 68 A.L.R.2d 883], wherein our Supreme Court held: "Sloan's cause of action against the insurer arose on August 13, 1950, when the judgment in the bodily injury action became final. The complaint in the present action was filed on May 28, 1954, less than four years but more than two years after the cause of action arose. Traders contends that an action of implied obligation arising out of contract is not on the written instrument and that therefore the four-year term prescribed in section 337, subdivision 1, of the Code of Civil Procedure is not applicable. We do not agree. The promise which the law implies as an element of the contract is as much a part of the instrument as if it were written out. [Citations.]"

Liberty's quotation from *Pacific Employers Ins. Co.* v. *Hartford Acc. & Indem. Co.,* 228 F.2d 365, 373, is not applicable to the present situation. There an insurer, as subrogee of its insured, sued to recoup from the negligent employees of the insured under the theory of *implied* indemnification, which is subject to the two-year period of limitations.

The instant action is one brought by one insurer against another insurer

upon an "obligation or liability founded upon an instrument in writing," i.e., the latter's written policy of insurance.

### Liberty's "Unclean Hands"

This point raised by Colonial is worthy of little discussion. After Liberty paid the Johnson judgment and the expenses incurred in defending the Johnson action, it filed suit in Butler Co.'s name against the three Butler employees (Crain, Sweet and Klatt) who were included as debtors in the Johnson judgment. (Colonial contends that these three employees never consented to the judgment stipulated to in the Johnson action.)

The Butler action was brought on the basis that an employer may recover from his employee for loss to the employer which has been caused by the employee's negligence, which the employer has not authorized and in which he has not participated. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 428 [296 P.2d 801, 57 A.L.R.2d 914].)

Colonial states that the "plot" is revealed by the *allegation* in the complaint in the Butler action that *"the only negligence or ground of liability for which said* [Johnson] *judgment was based was the negligence of the defendants* [Crain, Sweet and Klatt] *who were at the time of said accident employees of the plaintiff* [Butler Co.] . . . ." (Italics ours.)

Liberty, so the plot goes, expected that Colonial would refuse the defense of the three employees and that the latter would allow Butler Co. to take judgment against them by default. Butler Co. was then supposed to file suit against Colonial based on said default judgment and attempt to prove the foregoing quoted allegation in its complaint against Colonial. A determination of this issue in Liberty's favor would then establish that Colonial was the primary insurer on the Johnson risk.

The "plot" failed when Colonial *accepted* the defense of employees Crain, Sweet and Klatt in the Butler action brought against them. After many legal maneuvers the Butler action was eventually dismissed.

The trial court in its conclusions of law held that "Liberty Mutual Insurance Company was not guilty of conduct which would form a basis for the defense of unclean hands." We agree.

### Conclusion

Both the Liberty "Comprehensive General Liability Policy" and the Colonial "Automobile Insurance Policy" contain the following provision:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss . . . ."

The coverage under the above Liberty Policy is $5,000,000 and under the above Colonial Policy is $500,000. The liability of these parties is prorated accordingly. The judgment is reversed with directions to the trial court to amend its conclusions of law and enter judgment in accordance with this opinion. Each party is to pay its own costs on appeal.

Shoemaker, P. J., and Taylor, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 29, 1970.