[No. D057673. Fourth Dist., Div. One. Dec. 14, 2011.]

AMERICAN STATES INSURANCE COMPANY, Plaintiff and Appellant, v. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, Defendant and Respondent.

694

**Counsel**

Edwards & Hunter, Richard P. Edwards and Ellen E. Hunter for Plaintiff and Appellant.

Colliau Elenius Murphy Carluccio Keener & Morrow and Mary C. Anderson for Defendant and Respondent.

## Opinion

**McDONALD, J.**—American States Insurance Company (ASIC) paid the defense and indemnity costs to settle claims made against its insureds. However, because National Fire Insurance Company of Hartford (National) had issued policies that provided coverage for the same insureds for later time periods, and because ASIC contended some of the damages manifested during the period covered by National's policies, ASIC filed this action against National pleading claims for equitable contribution and declaratory relief.

National demurred to the complaint, alleging ASIC's causes of action for equitable contribution and declaratory relief were barred by expiration of the two-year statute of limitations. Before the court ruled on that demurrer, ASIC filed a first amended complaint pleading that ASIC was the assignee of the insured's claims for damages against National. National again demurred to the complaint, and the court sustained the demurrer with leave to amend. ASIC then filed a second amended complaint, alleging a claim labeled "subrogation," to which National again demurred on statute of limitations grounds. The court concluded ASIC's claim sounded in equitable contribution and ruled that, because the two-year statute of limitations applied to the claim, ASIC's claim was time-barred. The trial court sustained the demurrer without leave to amend, and this appeal by ASIC followed.

On appeal, ASIC argues that even if the court properly treated ASIC's equitable subrogation claim as a claim for equitable contribution, the four-year statute of limitations should apply to claims for equitable contribution. ASIC alternatively argues the court should have applied the four-year statute of limitations to its claim because ASIC properly may pursue reimbursement from National under an equitable subrogation claim.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *The Facts*[1]

ASIC issued general liability policies to Vision Systems, Inc., and S.D. Interstate Glass (the insureds) covering the period April 15, 1993, through April 15, 1996. National (the successor by merger to Transcontinental Insurance Company) issued general liability policies to the same insureds covering the period April 15, 1996, through April 15, 2002. Both ASIC's

---

[1] On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, we accept as true all material facts properly pleaded, but we do not assume the truth of contentions, deductions or conclusions of law. (See, e.g., *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 352 [118 Cal.Rptr.2d 443].)

policy and National's policy provided the insureds with coverage for "property damage" during the policy period caused by an "occurrence."

The insureds were named as additional defendants in a lawsuit brought by a homeowners association (the underlying action). The underlying action was settled, and the action against the insureds dismissed, by April 2007. ASIC contributed $965,666 on behalf of S.D. Interstate Glass, and $353,071.65 on behalf of Vision Systems, Inc., to settle the actions against the insureds. National did not contribute to fund the settlements on behalf of either insured. The insureds assigned to ASIC the insureds' rights against National for the damages the insureds suffered as a result of National's not contributing to the defense and indemnity costs for settlement of the underlying action.

### B.   *The Initial Pleadings*

ASIC filed an action against National in May 2009, alleging it was entitled to equitable contribution from National for a portion of the amounts paid by ASIC to settle the underlying action. National demurred to the complaint on the grounds the action was commenced more than two years after the accrual of ASIC's cause of action for equitable contribution and was therefore time-barred by Code of Civil Procedure[2] section 339, subdivision 1.

Before the scheduled hearing on National's demurrer, ASIC filed a first amended complaint seeking equitable contribution. The amended pleading alleged ASIC's action was founded on written instruments, within the ambit of the four-year statute of limitations specified in section 337 because (1) both National and ASIC had issued written policies of insurance to the insureds and (2) the insureds had in writing assigned their rights against National to ASIC. National again demurred to the complaint, noting that ASIC's action was in fact one seeking equitable *contribution* rather than an action pursued by ASIC as a *subrogee* of any rights held by the insureds. National therefore asserted the two-year statute of limitations applicable to contribution claims (rather than the four-year statute applicable to claims founded on a written instrument) governed ASIC's action, and the action was time-barred. The trial court agreed and sustained the demurrer, but granted ASIC the opportunity to amend the complaint to plead a subrogation claim.

### C.   *The Operative Complaint*

ASIC filed a second amended complaint purporting to plead a subrogation claim. That complaint alleged (1) ASIC had a written assignment from the insureds of the damages caused to the insureds as a result of National's not

---

[2] Statutory references are to the Code of Civil Procedure unless otherwise specified.

defending and indemnifying the insureds in the underlying action; (2) ASIC's action was founded on written instruments: the insurance policies issued by ASIC and National and the written assignment from the insureds to ASIC; (3) ASIC had settled the underlying action and had paid for property damages occurring during National's coverage period; (4) ASIC had been damaged by paying for the release and settlement of claims primarily the responsibility of National; and (5) "[j]ustice requires that that portion of the settlement representing damage occurring during [National's] coverage be shifted to [National] under principles of subrogation."

National demurred to the complaint, asserting ASIC's action remained a claim for equitable contribution and was barred by the two-year statute of limitations. National argued ASIC's effort to relabel the claim as one for *subrogation*, to make applicable the four-year statute of limitations, was ineffective because ASIC had not pleaded (and could not plead) the elements essential to a subrogation claim. National also argued that, to the extent ASIC's claim attempted to plead it was pursuing the action as *assignee* of the insureds, the insureds had suffered no losses and therefore had nothing to assign to ASIC. ASIC opposed the demurrer, asserting (1) it adequately pleaded the elements necessary to pursue a subrogation claim, (2) the fact the insureds were fully indemnified did not mean the insured had suffered no loss, and (3) equity should shift to a breaching insurer its equitable share of the claim.

The court sustained the demurrer without leave to amend. ASIC timely appealed.

## ANALYSIS

### A. Claims for Equitable Contribution Are Governed by the Two-year Statute of Limitations

In *Century Indemnity Co. v. Superior Court* (1996) 50 Cal.App.4th 1115 [58 Cal.Rptr.2d 69] (*Century Indemnity*), the court determined whether the statute of limitations applicable to a claim for equitable contribution among coinsurers was the two-year statute of limitations specified by section 339 as an action not founded on an instrument in writing, or the four-year statute of limitations specified by section 337 as an action founded on a written instrument. (*Century Indemnity*, at p. 1117.) The *Century Indemnity* court held the two-year statute applied, and rejected the holding in *Liberty Mut. Ins. Co. v. Colonial Ins. Co.* (1970) 8 Cal.App.3d 427 [87 Cal.Rptr. 348] (*Liberty*)

that the four-year statute of limitations applied to an action for equitable contribution, concluding that *Liberty* was "wrongly decided." (*Century Indemnity*, at p. 1117.)

■ ASIC asserts we should follow *Liberty*, reject the analysis of *Century Indemnity*, and conclude an action for equitable contribution among coinsurers is governed by the four-year statute of limitations. ASIC argues *Liberty* followed (and *Century Indemnity* is inconsistent with) the Supreme Court's decision in *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198] (*Comunale*).[3] We agree with the analysis of the court in *Century Indemnity* and hold a claim for equitable contribution is subject to the two-year statute of limitations set forth in section 339, subdivision 1.

In *Century Indemnity*, an insurer (Scottsdale Insurance Company (Scottsdale)) sought equitable contribution from Century for money Scottsdale spent to defend and settle an action against their coinsured. In rejecting Scottsdale's assertion that the four-year statute of limitations for breach of contract applied, the court observed: ". . . Scottsdale's cause of action is not founded upon an instrument in writing within the meaning of section 337, as it is not an action on a contract between contracting parties who are in privity. It is instead an action brought on equitable principles implied in the law and is thus governed by the two-year statute of limitations prescribed in section 339." (*Century Indemnity, supra,* 50 Cal.App.4th at p. 1124.) In reaching this conclusion, the court in *Century Indemnity* discussed *Liberty* at length, as well as the *Comunale* decision on which *Liberty* relied, and concluded *Liberty* was decided incorrectly. (*Century Indemnity*, at pp. 1117, 1124.) The court in *Century Indemnity* concluded ". . . *Comunale* . . . does not support the [*Liberty*] court's conclusion [because] [i]n *Comunale*, unlike [*Liberty*] or the instant action, the parties were in privity of contract. . . . [¶] . . . In *Comunale*, when the plaintiff, who had been assigned the rights of the insured, sued for the failure of the insurer to execute in good faith the terms of the insurance agreement, he sued directly on the contract of insurance." (*Century Indemnity*, at pp. 1120–1121.) The *Comunale* court observed that "[t]he promise which the law implies as an element of the contract is as much a part of the instrument as if it were written out." (*Comunale, supra,* 50 Cal.2d at p. 662.) Similarly, in *Century Indemnity*, the court held that when an assignee sues on an implied contractual promise, it is suing "directly on the contract of insurance." (*Century Indemnity*, at p. 1121.)

---

[3] ASIC also argues we should follow *Liberty* rather than *Century Indemnity* because ASIC has pleaded that the insureds' rights had been assigned to ASIC, which brought ASIC under the umbrella of *Comunale* and outside the purview of *Century Indemnity*. However, ASIC's argument confuses the issue of *which* statute of limitations applies to a claim for equitable contribution with the distinct issue of *whether* ASIC adequately stated a claim as subrogee or assignee of the insureds' rights. In this part we address only the former issue.

■ In contrast to *Comunale, Liberty* and *Century Indemnity* were not actions based on a written contract, but instead involved equitable actions. As the court in *Century Indemnity* observed: "In [*Liberty*], Liberty and Colonial had no contractual relationship. Although it could be said Liberty's cause of action stemmed remotely from Colonial's contract with its insured, Liberty's action against Colonial was founded on principles of equity. [¶] In the present case, too, . . . there is no privity of contract between Century and Scottsdale. . . . Century's obligation to contribute to Scottsdale's defense of their common insured is one recognized as a matter of law and founded in principles of equity." (*Century Indemnity, supra,* 50 Cal.App.4th at p. 1121.) Numerous cases have reinforced the principle that an action for equitable contribution is rooted in equity, not contract. (See, e.g., *Maryland Casualty Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, 1089 [97 Cal.Rptr.2d 374]; *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293, 1294–1295 [77 Cal.Rptr.2d 296] (*Fireman's Fund*).)

■ We agree with the reasoning of the court in *Century Indemnity* and hold the timeliness of ASIC's claim for equitable contribution is governed by section 339, subdivision 1. Because ASIC does not contend its claim for equitable contribution accrued less than two years before ASIC filed suit, the trial court correctly held ASIC's claim for equitable contribution was barred by the statute of limitations.

## B.   *ASIC Failed to State a Cause of Action for Subrogation*

ASIC's principal contention is that the court should have applied the four-year statute of limitations to its complaint because the principal thrust of its complaint was for subrogation rather than for equitable contribution.

### *The Differences Between Subrogation and Contribution*

In *Fireman's Fund, supra,* 65 Cal.App.4th 1279, the court noted that " '[i]t is hard to imagine another set of legal terms with more soporific effect than indemnity, subrogation, contribution, co-obligation and joint tortfeasorship.' [(Quoting *Herrick Corp. v. Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 756 [34 Cal.Rptr.2d 844].)] It is also difficult to think of two legal concepts that have caused more confusion and headache for both courts and litigants than have contribution and subrogation. [Citation.] Although the concepts of contribution and subrogation are both equitable in nature, they are nevertheless distinct." (*Fireman's Fund,* at p. 1291, fn. omitted.)

The *Fireman's Fund* court, recognizing that there are different public policies supporting the remedies of contribution and subrogation (*Fireman's Fund, supra*, 65 Cal.App.4th at p. 1296), explained: "Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim. By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the 'subrogee' is equitably *subrogated* to the claimant (or 'subrogor'), and succeeds to the subrogor's rights against the obligor. [Citation.] In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid. [Citations.]" (*Id.* at pp. 1291–1292.)

The *Fireman's Fund* court also explained: "The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have. [Citations.]" (*Fireman's Fund, supra*, 65 Cal.App.4th at pp. 1292–1293.)

In contrast to equitable subrogation, which essentially operates as an assignment by operation of law, the *Fireman's Fund* court explained that: "Equitable contribution is entirely different. It is the right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor* who *shares* such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from

profiting at the expense of others. [Citations.] [¶] ■ This right of equitable contribution belongs to each insurer individually. It is not based on any right of subrogation to the rights of the insured, and is not equivalent to ' "standing in the shoes" ' of the insured. [Citations.] Instead, the reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it . . . . [Citations.] 'As a matter of equity, insurers of the "same risk" may sue each other for contribution. [Citations.] This right is not a matter of contract, but flows " 'from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.' " [Citations.] The idea is that the insurers are "equally bound," so therefore they "all should contribute to the payment." [Citation.]' [(Quoting *Herrick Corp. v. Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 759.)]" (*Fireman's Fund, supra,* 65 Cal.App.4th at pp. 1293–1295, fns. omitted, italics added by *Fireman's Fund.*)

### *The Essential Elements of a Subrogation Claim*

■ The *Fireman's Fund* court identified the essential elements of an insurer's cause of action for equitable subrogation: "(a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured." (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1292.)

### *Analysis*

We conclude the trial court correctly sustained the demurrer to ASIC's second amended complaint because ASIC did not (and cannot) plead all of the elements essential to a claim for equitable subrogation. Although National

concedes ASIC pleaded some of the elements,[4] it contends (and we agree) that many of the essential elements are absent from ASIC's attempt to recast its claim into one seeking equitable subrogation rather than the time-barred claim for equitable contribution.

■ The principle defect in ASIC's pleading is its inability to allege ASIC paid for losses for which it was *not* primarily liable and had compensated the insured for losses for which National *was* primarily liable.[5] In cases involving progressive damages spanning several policy periods, each insurer is "responsible for the full extent of the insured's liability (up to the policy limits), *not just for the part of the damage that occurred during the policy period.*" (*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 105 [52 Cal.Rptr.2d 690], italics added; accord, *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 678 [42 Cal.Rptr.2d 324, 913 P.2d 878] [insurer liable for entire loss up to policy limits once coverage triggered].) The amounts paid by ASIC were sums for which ASIC *was* primarily liable, even though National may *also* have been primarily liable for some or all of those amounts. Although ASIC was entitled to seek *contribution* from National to ensure the loss is "apportion[ed] . . . between two . . . insurers who cover the same risk . . . so that each pays its fair share" (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1296), a *subrogation* claim (which seeks "to relieve entirely the insurer . . . who indemnified the loss and who in equity was *not* primarily liable therefor" (*ibid.*)) cannot be maintained because ASIC was also primarily liable for the losses suffered by the insureds.

---

[4] National concedes ASIC pleaded it was not a volunteer in making the payments (element (d)) and that it suffered damages (element (f)). Although National concedes all or parts of elements (a), (c), and (h) were pleaded, we are less sanguine. For example, element (a) requires the insured suffered a loss for which the defendant is liable either as (1) *the wrongdoer* whose act or omission caused the insured's loss or (2) because the defendant's relationship to the wrongdoer makes the defendant legally responsible to the insured for the loss caused by such wrongdoer. National was not the tortfeasor (and was not in some form of respondeat superior relationship with the tortfeasor) whose wrongdoing caused the loss suffered by the insured. Similarly, element (h)—which requires the insurer to show its damages "are in a liquidated sum, generally the amount paid to the insured"—appears absent, because ASIC's own pleading demonstrated the damages sought by ASIC were for a "portion" of the amounts paid by ASIC "according to proof," which appears inconsistent with the "liquidated sum" requirement. This latter defect highlights that ASIC is *not* pursuing equitable *subrogation* (which "requires that the party to be charged be in an 'equitable position . . . inferior to that of the insurer' such that justice requires *the entire loss be shifted from the insurer to the party to be charged,*" *Fireman's Fund, supra,* 65 Cal.App.4th at p. 1296, italics added), but instead is pursuing equitable *contribution,* which "aim[s] . . . to apportion a loss between two or more insurers . . . so that each pays its fair *share.*" (*Ibid.,* italics added.)

[5] We acknowledge ASIC's complaint *alleges* National was primarily liable for the damages that occurred during National's policy period, but on demurrer a court does not accept as true contentions, deductions or conclusions of law. (See, e.g., *Bagatti v. Department of Rehabilitation, supra,* 97 Cal.App.4th at p. 352.)

■ ASIC also cannot show the claim it seeks to pursue was an existing, assignable cause of action against National that the insureds could have asserted for their own benefit.[6] As the *Fireman's Fund* court explained, unlike contribution—which "exists *independently* of the rights of the insured" (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1295)—a claim pursued by subrogation "is purely derivative . . . [and] . . . an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have" (*id.* at p. 1292). Importantly, the *Fireman's Fund* court observed that when, as here, there are several insurance policies covering the same risk, the insured does not have "the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss. Hence, where there are several policies of insurance on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurance carriers, the insured has no further rights against the insurers who have not contributed to its recovery. Similarly, the liability of the remaining insurers *to the insured* ceases, even if they have done nothing to indemnify or defend the insured." (*Id.* at p. 1295.) Once the insureds were fully defended and indemnified by ASIC, they had no remaining claim for damages against any nonparticipating insurers (cf. *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 521 [115 Cal.Rptr.3d 42]), and the assignability element is thus absent here.

ASIC argues that its right to pursue subrogation is supported by *Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.* (2010) 182 Cal.App.4th 23 [105 Cal.Rptr.3d 606] (*Cleveland Wrecking*). However, *Cleveland Wrecking* did not hold that a coinsurer, who paid to defend and indemnify an insured against a third party claim, could pursue partial reimbursement of those amounts against a nonparticipating coinsurer by subrogation from the insured's rights against the nonparticipating coinsurer. Instead, *Cleveland Wrecking* involved a general contractor (Webcor Construction, Inc. (Webcor)) that hired a subcontractor (Cleveland Wrecking Company (Cleveland)) and, as part of the subcontract, obtained a contractual promise from Cleveland that it would defend and indemnify Webcor for claims arising out of Cleveland's work. Cleveland's employee caused an injury to a worker of another subcontractor, and that worker sued Webcor, but Cleveland declined Webcor's tender of the defense. Accordingly, Webcor's insurer undertook the defense and paid the defense and settlement costs.

---

[6] The courts have recognized that, when an insurer cannot proceed in equitable subrogation, an express assignment from the insured of the insured's purported rights adds nothing to the insurer's ability to recover. (See, e.g., *Dobbas v. Vitas* (2011) 191 Cal.App.4th 1442, 1455 [119 Cal.Rptr.3d 798].) For this reason, our discussion of ASIC's subrogation claim subsumes (and makes unnecessary any separate discussion of) ASIC's claim derived from the alleged assignment from the insureds.

(*Cleveland Wrecking*, at pp. 28–30.) The *Cleveland Wrecking* court held the insurer could seek full reimbursement from Cleveland by subrogation to Webcor's rights against Cleveland because Cleveland was liable to Webcor as the wrongdoer that caused the loss, and the loss was not one for which the insurer had been primarily liable. (*Id.* at pp. 34–36.) None of those elements are present here: ASIC may not obtain *full* reimbursement from National for the amount it paid; National was *not the wrongdoer that caused the losses* incurred by the insureds and paid by ASIC; and ASIC *was* one of the insurers primarily liable to pay the losses. *Cleveland Wrecking*'s discussion of an insurer's ability to pursue a subrogation claim has no application here.

The other cases cited by ASIC do not alter our conclusion. For example, although ASIC quotes *Maryland Casualty Co. v. National American Ins. Co.* (1996) 48 Cal.App.4th 1822 [56 Cal.Rptr.2d 498] (*Maryland Casualty*) as holding that a coinsurer is "subrogated to the insured's right to enforce another insurer's duty to defend" (*id.* at p. 1829), that language was found in the court's preliminary discussion of whether the coinsurer had *standing* to bring a declaratory relief action against another insurer (during the pendency of the underlying litigation against the mutual insured) to compel the other insurer to contribute to the defense costs for their mutual insured. The quoted language, which the *Maryland Casualty* court employed when it rejected the argument by the nonparticipating insurer that it had no defense obligations until the underlying action had shown it also had indemnity obligations and therefore the declaratory relief action was premature, was also mixed with references to other equitable concepts (including *contribution*) to support its conclusion that the action was proper. (*Id.* at pp. 1828–1829.) The discussion in *Maryland Casualty* predated *Fireman's Fund*, and was one of the cases the *Fireman's Fund* court believed had muddled the concepts of subrogation and contribution.[7] Because *Maryland Casualty* addressed a distinct issue and its

---

[7] The *Fireman's Fund* court noted that "passing reference[s] to 'general principles of equitable subrogation' " (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1300) are often dicta, and "[w]e suspect this is because the conceptual distinction between equitable subrogation and contribution generally has no practical impact on the ordinary *contribution* case." (*Id.* at fn. 7, italics added.) The *Fireman's Fund* court went on to observe that "our research has identified several cases which do appear to confuse the concepts of equitable subrogation and contribution," citing (among others) the *Maryland Casualty* decision on which ASIC relies, and explained the "references to subrogation in each of these opinions are actually dicta unnecessary to the decisions in the cases themselves, *which in fact turn on classic principles of equitable contribution. . . .* To the extent these decisions identify contribution with subrogation or base the former doctrine upon the latter, we respectfully disagree." (*Fireman's Fund,* at pp. 1300–1301, fn. 7, italics added.) We agree with *Fireman's Fund*'s reading of *Maryland Casualty,* and therefore conclude *Maryland Casualty* adds nothing to ASIC's claim that it may pursue an otherwise time-barred contribution claim under a subrogation label.

language was dicta, we are unpersuaded that *Maryland Casualty* should alter our conclusion.

The other cases cited by ASIC are similarly unpersuasive.[8] For example, although ASIC relies on *Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296 [56 Cal.Rptr.3d 491] (*Transcontinental*) for the proposition that "the shifting of a 'fair share' of the obligation to the non-participating carrier satisfies [element (g)] of a subrogation cause of action," the *Transcontinental* court did *not* involve a dispute between two primary insurers equally liable to the insured for the entire defense and indemnity obligations. Instead, *Transcontinental* involved a dispute between a primary insurer and an excess insurer, for which "ordinarily there is no *contribution*" but "there can be equitable subrogation . . . in limited circumstances . . . ." (*Id.* at p. 1304.) The *Transcontinental* court concluded that, because the insurer that defended the entire action "was *not* primarily liable for [the cost to defend certain claims, which] satisfies the second element required under equitable subrogation" (*id.* at p. 1308), and the other elements for equitable subrogation were satisfied (*ibid.*), the claim was proper. The "not primarily liable" element, which we have already concluded cannot be shown by ASIC here, makes any discussion by the *Transcontinental* court of the *other* elements inapplicable to this action.

## C. *Conclusion*

We are convinced the trial court correctly ruled ASIC's claim for equitable contribution was time-barred. Although a claim sounding in equitable subrogation may not have been time-barred, we are also convinced the trial court correctly ruled that ASIC did not and could not state a claim for equitable subrogation. The trial court correctly sustained National's demurrer without leave to amend and dismissed the action.

---

[8] We are unpersuaded that a Washington case on which ASIC relies (*Mutual of Enumclaw Ins. Co. v. USF Ins. Co.* (2008) 164 Wn.2d 411 [191 P.3d 866]) should apply here. In that case, the court's analysis was heavily dependent on the so-called "selective tender" rule, which appears to bar a participating insurer from seeking contribution from a nonparticipating insurer based solely on whether the insured elected to tender to the nonparticipating insurer. "The selective tender rule has had little traction outside of Illinois" (4 Bruner & O'Connor on Construction Law (2011) § 11:59), and the rule appears inconsistent with California law that "the right to equitable contribution exists *independently* of the rights of the insured . . . [and] where multiple insurers . . . share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should *not be left to the often arbitrary choice of the loss claimant* . . . ." (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1295, second italics added.) Because *Mutual of Enumclaw* turned principally on rules that appear incompatible with California law, we ascribe no significance to its analysis.

## DISPOSITION

The judgment is affirmed. National is entitled to costs on appeal.

Huffman, Acting P. J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 11, 2012, S200088. Kennard, J., was of the opinion that the petition should be granted.