*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 4**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WORKERS COMPENSATION FUND,
*Plaintiff and Appellee,*
*v.*
UTAH BUSINESS INSURANCE COMPANY,
*Defendant and Appellant,*

No. 20110744
Filed January 25, 2013

Third District, Salt Lake
Honorable Paul G. Maughan
No. 100914170

Attorneys:

James R. Black, Matthew J. Black, Salt Lake City,
for appellee

Michael E. Dyer, Scott R. Taylor, Salt Lake City,
for appellant

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1    Utah Business Insurance Company (UBIC) appeals the district court's order granting partial summary judgment to Workers Compensation Fund (WCF). UBIC also appeals the denial of two motions. We affirm and remand to the district court for resolution of the remaining issues.

## BACKGROUND

¶2    This case arises from an industrial accident that occurred while an employer, Pioneer Roofing Company (Pioneer), was insured under two separate workers compensation insurance policies: one with WCF (the WCF Policy) and one with UBIC (the UBIC Policy). Pioneer's coverage with WCF began on April 1, 2007, and ended on April 1, 2008. During this coverage period, Pioneer

decided to change insurers and obtained replacement workers compensation coverage with UBIC. The UBIC Policy stated over thirty times that its effective date was February 22, 2008, approximately five weeks before the WCF Policy terminated. Both policies were in effect on March 21, 2008, when Pioneer employee Russell Antone suffered a catastrophic workplace injury. WCF was promptly notified of Mr. Antone's injury and has paid all of his medical expenses and weekly compensation benefits.

¶3     Each policy contains the following "Other Insurance" clause:

> We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

Nearly two years after the accident, WCF became aware of the overlapping coverage and notified UBIC that it was seeking reimbursement for UBIC's "proportionate share of the costs incurred to date and the future ongoing costs associated with Mr. Antone's March 21, 2008 industrial injury." After further correspondence between the two insurers, WCF served UBIC with a summons and complaint in which it claimed that UBIC was either solely or jointly liable for Mr. Antone's insurance benefits.

¶4     After UBIC received the complaint, Pioneer president John Stout informed UBIC that his intent was to have WCF, and not UBIC, cover Mr. Antone's claim. Mr. Stout asked UBIC to change the UBIC Policy's effective date from February 22, 2008, to March 31, 2008. UBIC president Ron Nielsen subsequently sent an internal email instructing his staff to amend the UBIC Policy as Mr. Stout requested and to refund Pioneer's February and March premiums.

¶5     WCF filed a partial summary judgment motion asking the court to hold UBIC jointly liable on Mr. Antone's claim, based on the "Other Insurance" clauses in the policies. UBIC filed a countermotion for summary judgment, arguing that the court should apply the so-called targeted tender doctrine, a minority rule under which an insurer does not become liable for a loss unless the policyholder tenders a claim to it. Under the targeted tender doctrine, UBIC would not be liable on Mr. Antone's claim because Mr. Stout never tendered the claim to UBIC. In the alternative, UBIC

moved under rule 56(f) for additional discovery in order to support its theory that Pioneer and UBIC were mutually mistaken concerning the policy coverage dates. When these motions were filed, discovery had been ongoing for approximately three months.

¶6     The district court granted WCF's motion for partial summary judgment and denied UBIC's countermotion for summary judgment and its motion for additional discovery. UBIC timely appealed. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶7     "We review summary judgments for correctness, giving no deference to the [district] court's decision." *Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56. "We review the denial of a rule 56(f) motion for an abuse of discretion. We will not reverse the district court's decision to grant or deny a rule 56(f) motion for discovery unless it exceeds the limits of reasonability." *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 20, 192 P.3d 858 (citation omitted) (internal quotation marks omitted).

## ANALYSIS

¶8     We first examine the targeted tender doctrine and determine that it is incompatible with Utah's statutory workers compensation scheme. We therefore determine that UBIC is jointly liable with WCF on Mr. Antone's claim and that WCF is entitled to equitable contribution from UBIC. Finally, we hold that the district court did not abuse its discretion in denying UBIC's motion for additional discovery.

## I. THE TARGETED TENDER DOCTRINE IS INCOMPATIBLE WITH UTAH WORKERS COMPENSATION LAW

¶9     The targeted tender doctrine is a minority rule that has been adopted in a few states but has never been applied in the context of workers compensation. Under the targeted tender doctrine, an insurer becomes liable on a claim only if the policyholder tenders the claim to the insurer. Thus, the rule permits a policyholder to choose which insurer, if any, covers its loss.

¶10     For example, Illinois and Washington have adopted the targeted tender doctrine, though neither state has applied it to workers compensation insurance. *John Burns Constr. Co. v. Ind. Ins. Co.*, 727 N.E.2d 211, 215, 217 (Ill. 2000) (holding that the insured "had the right to choose which insurer would be required to defend and

indemnify it" and refusing to give effect to the "other insurance" clauses in the insurance contracts); *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 874 (Wash. 2008) (concluding that because an insured "chose not to tender to" one insurer, that insurer "had no legal obligation to defend or indemnify" the insured). The federal district court for the District of Montana has also interpreted Montana law as recognizing the targeted tender doctrine. *Cas. Indem. Exch. Ins. Co. v. Liberty Nat'l Fire Ins. Co.*, 902 F. Supp. 1235, 1239 (D. Mont. 1995) ("[W]here the insured has failed to tender the defense of an action to its insurer, the latter is excused from its duty to perform under its policy or to contribute to a settlement procured by a coinsurer.")

¶11   A California appeals court, on the other hand, has explicitly rejected the targeted tender doctrine as "inconsistent with California law," holding that "the right to equitable contribution exists *independently* of the rights of the insured." *Am. States Ins. Co. v. Nat'l Fire Ins. Co.*, 135 Cal. Rptr. 3d 177, 187 n.8 (Ct. App. 2011), *review denied* (internal quotation marks omitted). The court held that "where multiple insurers . . . share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should *not be left to the often arbitrary choice of the loss claimant.*" *Id.* (alteration in original) (internal quotation marks omitted).

¶12   Without addressing the question in terms of general insurance law, we conclude that the targeted tender doctrine is inconsistent with Utah workers compensation law. Workers compensation in Utah is a matter of "clear and substantial public policy" and is "of overarching importance to the public." *Touchard v. La-Z-Boy Inc.*, 2006 UT 71, ¶¶ 13, 17, 148 P.3d 945 (internal quotation marks omitted). In fact, workers compensation law "furthers a 'public interest [that] is so strong" that aspects of it are placed "beyond the reach of contract." *Id.* ¶ 16 (alteration in original) (internal quotation marks omitted). For example, an employee's waiver of the right to workers compensation is invalid, as is an employee's agreement to pay any portion of the workers compensation insurance premium. UTAH CODE § 34A-2-108(1)–(2). The Utah Labor Commission's Division of Industrial Accidents (Division) administers the state's workers compensation program, and maintains a database of workers compensation coverage status, which insurers must update within thirty days of commencement of coverage and within ten days of cancellation. *See Id.* § 34A-2-205.

¶13    Our workers compensation law creates rights on the part of employees and corresponding duties on the part of employers and insurers. "'[A]n employee . . . who is injured . . . by accident arising out of and in the course of the employee's employment' is entitled to compensation." *Touchard*, 2006 UT 71, ¶ 8 (second and third alterations in original) (quoting UTAH CODE § 34A-2-401(1)). This right to compensation is absolute, and if an employer has failed to provide insurance, the injured employee can recover from the Uninsured Employers' Fund. *Id.* ¶ 15 (citing UTAH CODE § 34A-2-208(1)). Additionally, the statute allows injured employees to bring claims against insurers in their own names. UTAH CODE § 31A-22-1004.

¶14    Employers have a corresponding statutory duty to "secure the payment of workers' compensation benefits for [their] employees by . . . insuring, and keeping insured, the payment of this compensation with the Workers' Compensation Fund," with an authorized private insurer, or through an approved form of self-insurance. *Id.* § 34A–2–201. The Act "imposes criminal penalties on employers who fail to comply." *Touchard,* 2006 UT 71, ¶ 12 (citing UTAH CODE § 34A–2–209).

¶15    Insurers have a statutory duty to honor all claims brought within their coverage period, which continues "until the policy is canceled." UTAH CODE § 31A-22-1002(1). Cancellation may be by "agreement between the Division . . . , the insurer, and the employer; or [by] . . . notice by the insurer to the employer . . . and . . . the Division." *Id.* Insurers may *not* cancel coverage without the consent of or notice to the Division and the employer. "Failure to notify the division . . . results in the continued liability of the carrier until the date that notice of cancellation is received by the division." *Id.* § 34A-2-205(1)(c). Thus, insurers cannot retroactively cancel coverage, as UBIC attempted to do at Mr. Stout's request by changing the policy coverage dates. *See supra* ¶ 4.

¶16    Under this statutory scheme, an insurer becomes liable on a claim as soon as an employee informs an employer of an accident. Utah Code section 31A-22-1006 provides that

> [e]very workers' compensation policy or contract shall contain a provision that, as between the employee and the insurer, *notice to or knowledge of the occurrence of the injury on the part of the employer is considered to be notice or knowledge to the insurer.* This provision shall also state that the insurer is bound by and subject to the orders,

> findings, decisions, and awards rendered against the
> employer for the payment of compensation on account
> of compensable accidental injuries or occupational
> disease disability.

(Emphasis added.) Thus, an insurer is liable for accidents occurring during the coverage period whether or not an employer formally "tenders" a claim to the insurer. The insurer's liability attaches when the *employer* is informed of the injury.

¶17    The workers compensation statutes have one central purpose: to ensure that employees are covered in the event of an accident. To this end, the statutes create a highly regulated workers compensation scheme with bright-line rules: (1) insurers of record are liable until coverage is cancelled by agreement with or notice to the employer and the Division and (2) insurers are liable for injuries reported to employers regardless of whether employers formally tender claims to the insurers.

¶18    The targeted tender doctrine is premised on the right of the insured to choose whether and to whom to tender a claim. *See John Burns*, 727 N.E.2d at 215 (holding that the insured "had the right to choose which insurer would be required to defend and indemnify it"); *Mut. of Enumclaw*, 191 P.3d at 874 (concluding that because an insured "chose not to tender to" one insurer, that insurer "had no legal obligation to defend or indemnify" the insured). No such right exists under the Utah workers compensation regime. All insurers on record with the Division are automatically liable for claims reported to employers. The statutory scheme therefore precludes us from adopting the targeted tender doctrine in the context of workers compensation.[1]

### II. UBIC IS JOINTLY LIABLE WITH WCF ON MR. ANTONE'S CLAIM

¶19    "The doctrine of 'equitable contribution' permits an insurer [that] has paid a claim[] to seek contribution directly from other insurers who are liable for the same loss." *Cas. Indem. Exch. Ins. Co. v. Liberty Nat'l Fire Ins. Co.*, 902 F. Supp. 1235, 1237 (D. Mont. 1995).

---

[1]    UBIC advances several policy justifications for the targeted tender doctrine (that it allows policyholders to avoid premium increases, to preserve policy limits for other claims, to safeguard their relationship with their current insurer, and to avoid insurers with whom they have had a bad experience), none of which have relevance or application in the workers compensation context.

The doctrine of equitable contribution governs disputes in Utah between co-insurers who are liable for a common obligation. *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 137–38 (Utah 1997).

¶20 We noted in *Sharon Steel* that equitable contribution is buttressed by two policy considerations. First, it prevents the "inequitable result" of forcing one insurer to bear more than its share of losses. *Id.* at 138. Second, equitable contribution furthers this court's "policy of encouraging [insurers to make] prompt payments to the insured, leaving disputes concerning coverage to be determined later." *Id.* Insurance companies who know they can sue co-insurers for contribution will be more likely to pay claims promptly, as WCF did here.

¶21 UBIC contends that equitable contribution should not be available to WCF because WCF and UBIC are not "liable for the same loss." UBIC argues that it is not liable on Mr. Antone's claim because Pioneer did not tender the claim to UBIC. However, as discussed above, *supra* ¶ 18, we reject the targeted tender doctrine in the context of workers compensation. The liability of a workers compensation insurer is triggered when an employee reports an accident to a covered employer. Therefore, UBIC and WCF are indeed "liable for the same loss."

¶22 We conclude, as did the Arkansas Supreme Court in another case involving dual workers compensation coverage, that "[t]he only equitable and fair way to apportion the loss is to divide it equally." *City of Waldo v. Poetker*, 628 S.W.2d 329, 333 (Ark. 1982). "Where multiple [workers compensation] insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured." *Am. States Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 135 Cal. Rptr. 3d 177, 183 (Ct. App. 2011) (internal quotation marks omitted). WCF's claim against UBIC for equitable contribution is independent of the actions of Pioneer. UBIC is liable to WCF for half of the reasonable past and future benefits paid on Mr. Antone's claim. We therefore affirm the district court's grant of partial summary judgment for WCF and its denial of summary judgment for UBIC.

## III. THE DISTRICT COURT DID NOT ABUSE ITS
## DISCRETION IN DENYING UBIC'S MOTION
## FOR ADDITIONAL DISCOVERY

¶23    As an alternative to its motion for summary judgment, UBIC moved for additional discovery under rule 56(f) of the Utah Rules of Civil Procedure. Rule 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavits essential to justify the party's opposition, the court may refuse the

application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Although we have encouraged district courts to "liberally grant rule 56(f) motions," *Crossland Sav. v. Hatch*, 877 P.2d 1241, 1243 (Utah 1994), we will not reverse a district court's ruling on a rule 56(f) motion unless it "exceeds the limits of reasonability," *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 20, 192 P.3d 858 (internal quotation marks omitted).

> The "limits of reasonability" standard is based on the specific circumstances of each case—there is not a "bright line" test for determining whether the district court abused its discretion. Some of the relevant factors in determining whether a rule 56(f) motion is warranted include, but are not limited to: (1) an examination of the party's rule 56(f) affidavit to determine whether the discovery sought will uncover disputed material facts that will prevent the grant of summary judgment or if the party requesting discovery is simply on a "fishing expedition," (2) whether the party opposing the summary judgment motion has had adequate time to conduct discovery and has been conscientious in pursuing such discovery, and (3) the diligence of the party moving for summary judgment in responding to the discovery requests provided by the party opposing summary judgment.

*Id.* ¶ 21 (citation omitted).

¶24    UBIC stated in its memorandum accompanying its rule 56(f) motion that if additional discovery were permitted, it expected to discover the following information: "(1) the intent of Pioneer Roofing and UBIC at the time the policy was entered into with

respect to the coverage period for the policy; (2) communications between Pioneer and WCF with respect to coverage, and payment of the claim; and (3) that the medical expenses were unreasonable and the indemnity benefits were overpaid." Only the first point is relevant to opposing WCF's motion for partial summary judgment. Communications between Pioneer and WCF have no bearing on UBIC's liability in light of our decision not to apply the targeted tender doctrine. And the issue of "the reasonableness of the past benefits and administrative costs already paid by WCF" was left "pending . . . and subject to further discovery by the parties," according to footnote 3 of the district court's order. Therefore, we consider only whether the district court abused its discretion in denying additional discovery regarding the intent of Pioneer and UBIC as to the coverage period.

¶25   UBIC attached to its motion affidavits by its president, Ron Nielsen, and by Pioneer's president, John Stout.[2] Mr. Nielsen affirmed that "[u]ntil WCF made its demand for reimbursement, UBIC did not know that its 2008 policy allegedly overlapped with the WCF policy" and that "[d]ue to a mistake in coverage dates, a new policy was written for Pioneer and the erroneously collected premiums were credited to Pioneer's account." Mr. Stout affirmed:

> On February 22, 2008, I met with Shawn Morin, the agent for the policy that was ultimately underwritten by [UBIC]. At that time, I made it clear that Pioneer wanted the new policy to begin following the expiration of the WCF policy.

> Upon receipt of the policy from UBIC I reviewed it, but did not notice that coverage mistakenly began on the date I met with the agent (February 22, 2008), not after the expiration of the WCF policy.

---

[2] The parties dispute the admissibility of these affidavits and other parol evidence that may have been produced during further discovery. We do not resolve this dispute because UBIC has not suggested that these affidavits are sufficient to show mutual mistake and because the district court had other grounds for denying additional discovery.

I never intended to have overlapping workers' compensation insurance coverage. The policies were always intended to be successive, not concurrent.

¶26     To succeed in a rule 56(f) motion, a party must show why it "cannot *for reasons stated*" defend against the motion for summary judgment without additional discovery. UTAH R. CIV. P. 56(f) (emphasis added). Here, the only "reason" set forward by UBIC is insufficient time. UBIC argues that "[d]uring these three, short, holiday-filled months, the parties only exchanged one set of discovery requests, and UBIC was still awaiting responses to its discovery requests from WCF . . . . UBIC was still evaluating the information it had gathered to determine who should be deposed and what questions should be asked." We find these arguments unpersuasive because the mutual mistake alleged by UBIC did not involve WCF; it was between UBIC and Pioneer, UBIC's cooperative former policyholder. UBIC has not given "reasons" why it could not, within three months, obtain information from its own records and its own employees and from Pioneer. Accordingly, the district court could have determined that UBIC "had adequate time to conduct discovery." *Overstock.com*, 2008 UT 55, ¶ 21.

¶27     The district court could also have determined that UBIC "failed to identify any [information yet to be discovered] that would have provided a material factual dispute to preclude summary judgment." *Id.* ¶ 27. This is because the "mistake" alleged by UBIC, even if proven through further discovery, would not qualify under the doctrine of mutual mistake. Mutual mistake occurs when, "at the time the contract is made, the parties make a mutual mistake about a material fact, the existence of which is a basic assumption of the contract." *Deep Creek Ranch, LLC v. Utah State Armory Bd.*, 2008 UT 3, ¶ 17, 178 P.3d 886 (internal quotation marks omitted); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 152(1) (1981) ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party[.]").

¶28     A mistake is "material" and goes "to a basic assumption of the contract" only if it affects an element of the parties' bargain. Here, UBIC and Pioneer bargained for UBIC to provide workers compensation coverage to Pioneer and for Pioneer to pay premiums to UBIC. The fact that the UBIC workers compensation policy overlapped with another policy did not alter this bargain.

¶29     Furthermore, even if the "mistake" amounted to a mutual mistake, UBIC would not have a claim for reformation because it was not the adversely affected party. *See* RESTATEMENT (SECOND) OF

CONTRACTS § 152(1) (1981) (stating that a remedy is available only to "the adversely affected party"). To determine whether a party has been adversely affected, we look to the effect of the mutual mistake at the time the contract is entered. Here, when the contract was entered, double coverage actually *benefited* UBIC by allowing it to collect full premiums from Pioneer while sharing liability with WCF. Only in retrospect—after Mr. Antone's accident—is contract reformation desirable to UBIC.

¶30     Because of the host of grounds for denying UBIC's rule 56(f) motion, the district court acted well within "the limits of reasonability," and therefore did not abuse its discretion. *Overstock.com*, 2008 UT 55, ¶ 20 (internal quotation marks omitted).

## CONCLUSION

¶31     The UBIC Policy and the WCF Policy were both in effect at the time of Mr. Antone's accident. Because we decline to apply the targeted tender doctrine in the workers compensation context, we hold that both insurers are liable for Mr. Antone's claim. WCF is therefore entitled to equitable contribution from UBIC for reasonable past and future costs associated with the claim.

¶32     We affirm the district court's granting of WCF's motion for partial summary judgment and its denial of UBIC's motion for summary judgment and motion for additional discovery. We remand to the district court for resolution of the remaining issues.