PUBLIC SERVICE MUTUAL INSURANCE CO.,
Plaintiff,

v.

LIBERTY SURPLUS INSURANCE CORPORATION and Does 1 through 10, inclusive, Defendants.

No. 2:14–cv–00226–MCE–KJN.

United States District Court,
E.D. California.

Signed Sept. 30, 2014.

938

Brian J. O'Connor, Diepenbrock and Cotter, Sacramento, CA, for Plaintiff.

Patrick P. Fredette, Timothy R. Sullivan, McCormick, Barstow, Sheppard, Wayte and Carruth, LLP, Fresno, CA, for Defendants.

## MEMORANDUM AND ORDER

MORRISON C. ENGLAND, JR., Chief Judge.

Through the present action, Plaintiff Public Service Mutual Insurance Company ("PSMIC" or "Plaintiff") seeks equitable indemnification from another insurance carrier, Liberty Surplus Insurance Corporation ("LSIC") for amounts paid by PSMIC for the defense and indemnification of its insureds, Fair Oaks Fountains, LLC ("FOF") and FPI Management Company ("FPI"). According to PSMIC's Complaint, LSIC was obligated to pay those amounts under its own policy, issued to Gala Construction, on grounds that both FOF and FPI were specifically designated as additional insureds under the LSIC policy, and because, according to PSMIC's Complaint, the LSIC policy was primary as to the underlying loss. That loss occurred when an injury occurred, allegedly as a result of Gala's negligence, while Gala effectuated repairs on an apartment complex owned by FOF and managed by FPI. Presently before the Court is Defendant LSIC's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil

Procedure Rule 12(b)(6),[1] which further includes a request that any reference to punitive damages be stricken in accordance with Rule 12(f). As set forth below, Defendant's Motion will be granted in part and denied in part.[2]

### BACKGROUND

On August 21, 2008, Diana Balfour, a tenant at the Fountains of Fair Oaks, an apartment complex located in Fair Oaks, California, was injured when she slipped on standing water in her apartment. According to the Complaint, that water entered Ms. Balfour's apartment through the roof as a result of an irrigation pipe broken by Gala or its subcontractors while working on the complex. According to the Complaint, the injuries and damages claimed by Ms. Balfour arose out of the materials and/or services provided by Gala pursuant to a construction contract entered into between Gala and FOF, the entity that owned the complex. Compl., ¶ 21.

The construction contract's general conditions required Gala to indemnify FOF and its agents for liability arising out of Gala's work, providing in pertinent part as follows:

> Contractor [Gala] shall indemnify and hold harmless the Owner [FOF and its agents or employees] from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work.... but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them to anyone for whose acts they may be liable, regard-

less of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

Compl., Ex. B., p. 17, § 3, 18.1 of the General Conditions.

Additionally, the construction agreement itself required Gala to maintain general liability insurance coverage in specific amounts, and mandated that FOF be named as an additional insured on that policy by formal endorsement. Compl., Ex. A, Article 16. Consistent with that directive, the liability policy issued to Gala by LSIC contained a separate endorsement specifically adding FOF by name as an insured. Compl., Ex D. The endorsement further specified that the coverage provided to FOF as an additional insured was only with respect to FOF's liability arising from Gala's work on FOF's behalf. *Id.* Additionally, because FPI was FOF's real estate manager at the time of the subject loss, FPI was made an additional insured under the LSCI policy by virtue of language extending coverage to any organization acting as a real estate manager for an insured. Compl., Ex. C, p. 15, Section II.2.b. Perhaps most significantly, the LSIC policy specified that the coverage it provided would be primary with respect to any other insurance carried by additional insureds like FOF and FPI:

> To the extent that this coverage is afforded to any additional insured under the policy, **such insurance shall apply as primary and not contributing with any Insurance carried by such additional insured,** as required by written contract.

Compl., Exhibit C. Endorsement No. 15, p. 59 (emphasis added).

---

**1.** All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

**2.** Having determined that oral argument was not of material assistance, the Court ordered this matter submitted on the papers. E.D. Cal. Local R. 230(g).

As the general liability carrier for FOF and FPI, Plaintiff claims that it tendered the defense of Ms. Balfour's action to LSIC on "no fewer than eight occasions between November 12, 2008 and April 8, 2011." Pl.'s Opp'n, 4:18–21. Plaintiff contends that LSIC has consistently refused to accept that tender, despite that fact that, according to Plaintiff, "the injuries and damages prayed for by Ms. Balfour in the Underlying Action arise of, or are directly and or indirectly connected with the work performed, materials furnished by, and/or services provided by GALA, its employees, subcontractors or agents to and/or on behalf of FOF and FPI" under the construction contract (Compl., 6:28–7:3) and despite the language of LSIC's own policy which described its coverage as primary. Given LSIC's refusal to defend and indemnify, PSMIC claims it was forced to provide a defense to FOF and FPI and to fund a settlement with Ms. Balfour reached in April of 2913, which included the sum of $50,000 paid by PSMIC on behalf of FOF and FPI. PSMIC initially filed a suit against LSIC in the name of FOF and FPI. That lawsuit was voluntarily dismissed after PSMIC confirmed in discovery that it had funded the defense and indemnification of FPF and FPI in the Balfour action such that FOF and FPI themselves sustained no damage. PSMIC then filed the present action on its own behalf to recover the expenses it had incurred by way of equitable subrogation. Plaintiff's complaint contains causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing and declaratory relief. LSIC's Motion to Dismiss now before the Court contests the validity of all three of those claims. LSIC further contends that even if Plaintiff's complaint for breach of the covenant survives pleading scrutiny at this juncture, any request for attendant punitive damages is improper and must be stricken.

## STANDARD

### A. Motion to Dismiss

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed.2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) ... requires a showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n. 3, 127 S.Ct. 1955 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, *supra*, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment ...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the *Foman* factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party ... carries the greatest weight." *Id.* (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir.1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri–Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir.2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir.2005); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989) ("Leave need not be granted where the amendment of the complaint ... constitutes an exercise in futility ....")))

### B. Motion to Strike

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (internal citations and quotations omitted). Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. *Id.*

### ANALYSIS

### A. Equitable Subrogation/Contribution

Plaintiff PSMIC's Complaint, while asserting causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and associated declaratory relief, is nonetheless premised on principles of equitable subrogation as indicated above. According to Plaintiff, because it defended FOF and FPI in the

underlying action, and subsequently paid to settle Ms. Balfour's personal injury claim, Plaintiff "became subrogated to all the rights of FOF and FPI in the sums paid for defense and indemnity and Plaintiff therefore became entitled to enforce all of the remedies available to FOF and FPI against [LSIC] with respect to those sums." Compl., ¶ 25. LSIC argues that because it was a "co-insurer" with PSMIC, Plaintiff cannot pursue a subrogation claim for defense and indemnification costs and instead is limited to pursing an equitable contribution claim that Plaintiff has not alleged. LSIC's Mot., 5:23–25; Reply, 5:1–2.

In analyzing LSIC's motion, then, the Court must first consider whether Plaintiff's lawsuit properly sounds in subrogation or instead whether principles of contribution should apply. As several courts have noted, few legal doctrines have caused more confusion and headache for both courts and litigants than have contribution and subrogation. *American States Ins. Co. v. Nat'l Fire Ins. Co. of Hartford,* 202 Cal.App.4th 692, 700, 135 Cal.Rptr.3d 177 (2012), citing *Fireman's Fund Ins. Co. v. Maryland Cas. Co.,* 65 Cal.App.4th 1279, 1291, 77 Cal.Rptr.2d 296 (1998). Although both concepts are equitable in nature, they are nonetheless distinct. *Id.* The key to distinguishing subrogation and contribution, as Plaintiff recognizes, is to determine whether the PSMIC and LSIC cover the same risk, or whether the policies are primary and excess and therefore sue different risks at different levels of coverage. Plaintiff claims that LSIC's Motion ignores that key distinction.

As indicated above, the LSIC policy itself specified that with respect to additional insureds like FOF and FPI, its coverage "shall apply as primary and not contributing with any Insurance carried by such additional insured." Compl., Ex. C.

Endorsement No. 15, p. 59. LSIC's own description of its policy as primary with respect to other policies maintained by FOF and FPI is entitled to deference. Courts generally enforce the terms of insurance policies pertaining to allocation issues and the characterization of a policy as "primary" or "excess." *Maryland Cas. Co. v. Nationwide Mutual Ins. Co.,* 81 Cal.App.4th 1082, 1090, 97 Cal.Rptr.2d 374 (2000). Additionally, comparison of the LSIC and PSMIC policies makes it clear that they insure different risks in any event. The coverage afforded to FOF and FPI by LSIC was with respect to their liability for "ongoing operations" performed for them by Gala. LSIC Policy, Endorsement 20, Ex. D to Pl.'s Compl. Therefore LSIC's coverage, as applied to FOF and FPI, was for their vicarious liability for the work performed by Gala at the subject apartment complex. The PSMIC policy, on the other hand, was a general liability policy not limited to Gala's specific work on the FOF apartment complex.

The LSIC policy's primary application to the underlying Balfour claim is further underscored by the Complaint itself, which represents that the injuries and damages sought by Ms. Balfour "arise out of, or are directly and/or indirectly connected with the work performed, materials furnished by, and/or services provided by GALA, its employees, subcontractors or agents to and/or on behalf of FOF and FPI...." Compl., 6:27–7:3. The Complaint contains no allegations that Balfour's injuries were caused in whole or in part by direct negligence on the part of FOF or FPI as opposed to vicarious liability for Gala's negligence. Consequently, while the PSMIC policy would have provided coverage for active negligence and whereas the LSIC coverage applied only to FOF and FPI's vicarious responsibility, at least on

the basis of the allegations contained in the Complaint, which must be accepted as true for purposes of a motion to dismiss, the underlying facts point only to vicarious liability for which the LSIC policy provided primary coverage. Therefore, on the basis of the Complaint, it would appear clear that the LSIC was primary and the PSMIC policy applied only on an excess basis. Equitable contribution cannot apply because PSMIC and LSIC "did not share the same level of liability and were not obligated to defend the same loss or claim." *Transcontinental Ins. Co. v. Ins. Co. of the State of Pa.*, 148 Cal.App.4th 1296, 1304, 56 Cal.Rptr.3d 491 (2007); *see also Maryland Cas. Co. v. Nationwide Mutual Ins. Co.*, 81 Cal.App.4th at 1089, 97 Cal.Rptr.2d 374 (equitable contribution "applies to apportion costs between insurers that share the same level of liability on the same risk as to the same insured"). Here, the risk involved differed both on the basis of LSIC's own policy and by virtue of the allegations of the complaint. Although contribution is accordingly not applicable in this matter, because PSMIC's policy was excess, it could pursue claims against the primary carrier, LSIC, though equitable subrogation.

■ "Subrogation" is the "substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th at 1291, 77 Cal.Rptr.2d 296. In the case of insurance, subrogation "allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss." *Maryland Cas. Co. v. Nationwide Mutual Ins. Co.*, 81 Cal.App.4th at 1088–89, 97 Cal. Rptr.2d 374. "Where different insurance carriers cover differing risks and liabilities, they may proceed against each other for reimbursement by subrogation rather than by contribution." *Transcontinental Ins. Co. v. Ins. Co. of the State of Pa.*, 148 Cal.App.4th at 1304, 56 Cal.Rptr.3d 491; citing *Reliance Nat. Ind. Co. v. Gen'l Star Indem. Co.*, 72 Cal.App.4th 1063, 1077–79, 85 Cal.Rptr.2d 627 (1999). Because the doctrine shifts the entire cost burden, the insurer seeking subrogation ("the subrogating insurer") must show the other insurer was "primarily liable for the loss and that the moving party's equitable position is inferior to that of the second insurer." *Id.* The subrogated insurer is said to "stand in the shoes" of its insured, because it has no greater rights that the insured and is subject to the same defenses assertable against the insured. *Transcontinental*, 148 Cal.App.4th at 1303, 56 Cal. Rptr.3d 491 (citing *Maryland Cas. Co.*, 81 Cal.App.4th at 1088–1089, 97 Cal.Rptr.2d 374). Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and can claim no rights which the insured does not have. *Fireman's Fund v. Maryland Cas. Co.*, 65 Cal.App.4th at 1292–1293, 77 Cal.Rptr.2d 296.

■ The essential elements for a subrogation claims against an insurer include 1) that the insured has suffered a loss for which the defendant insurer is liable; 2) that the claimed loss was one which the insurer seeking subrogation was not primarily liable; 3) that the insurer has compensated the insured for the loss for which the defendant insurer is primarily liable; 4) that the insurer has not paid the claim as a volunteer; 5) that the insured has an existing, assignable cause of action against the defendant insurer which the insured could have asserted for his own benefit had he not been compensated for the loss by the insurer; 6) that the subrogating insurer has suffered damage by the defen-

dant insurer's acts or omissions; 7) that justice requires on equitable grounds that the loss be entirely shifted from the subrogating insurer to the defendant insurer; and 8) that the subrogating insurer's damages are liquidated in nature. *Id.* at 1292–93, 77 Cal.Rptr.2d 296. As long as these prerequisites are met, no finding of any separate duty owed to an excess carrier is required. *See Continental Cas. Co. v. Royal Ins. Co. of Am.,* 219 Cal.App.3d 111, 118, 268 Cal.Rptr. 193 (1990).

 Applying these principles to the facts of the present matter, the Court has already concluded that the policy issued by LSIC was primary given the allegations of Plaintiff's Complaint, and since the Complaint asserts that Ms. Balfour's injuries were due to Gala's negligence, it would appear equally clear at this point that the LSIC policy covers any vicarious liability of FOF and FPI for her damages. It is further clear on the basis of the Complaint that PSMIC has paid for both the defense and indemnification of its insureds in the Balfour lawsuit, and did not do so as a volunteer. Additionally, for purposes of claiming damages by way of subrogation, the question of whether the insured has been damaged is measured by whether or not damage would have occurred had the excess carrier, PSMIC, not stepped in to cover the loss. *See Interstate Fire and Cas. Ins. Co. v. Cleveland,* 182 Cal.App.4th 23, 36, 105 Cal.Rptr.3d 606 (2010) ("*Cleveland* "). On that basis, damage is present. Further, since PSMIC's subrogated damages, in the form of sum certain defense costs and a fixed sum paid, PSMIC's damages are liquidated in nature.

 The only remaining question, and probably the closest determination in assessing the prerequisites for equitable subrogation here, rests with determining whether the equities mandate that LSIC,

as opposed to PSMIC bear the entire burden of covering the defense and indemnification costs. In making that determination, courts have looked to whether the party seeking indemnification had any role in causing the accident, and whether there was any contractual obligation on the part of the defendant insurer to provide defense and indemnification. *See, e.g., Interstate Fire and Cas. Ins. Co. v. Cleveland,* 182 Cal.App.4th at 37–39, 105 Cal.Rptr.3d 606. Here, there is no indication that PSMIC, or its insureds, FOF and FPI, had anything to do with causing the underlying loss. Further, the LSIC policy expressly agreed to provide coverage to both FOF and FPI for damages arising from Gala's negligence in performing work at the apartment complex where the incident occurred. Consistent with that obligation, Gala itself agreed to defend and indemnify FOF and FPI for any losses they incurred as a result of Gala's negligence at the project site. Pl.'s Compl., Ex. B, p. 17, § 3.18.1. All these factors point to a conclusion at this time that the equities do not support LSIC's failure to step in and provide the defense and indemnification, with the entire burden of shouldering those expenses properly transferred to LSIC. Having determined that the adequacy of Plaintiff's complaint should be assessed through the lens of equitable subrogation, the Court now turns to the specific causes of action asserted by Plaintiff.

**B. Breach of Contract**

In seeking dismissal of the Complaint's breach of contract claim, LSIC makes two arguments. First, LSIC argues that because PSMIC lacks any privity of contract with LSIC, it cannot state a claim for contractual breach. Secondly, LSIC asserts that because FPI and FOF suffered no damages (since their defense and indemnification costs were covered by

PSMIC), there are no damages to PSMIC's insureds to which PSMIC can claim subrogation. Neither argument is persuasive.

■ For purposes of subrogation, privity of contract between insurers is not required. That is because of the nature of subrogation, which looks to the nature of insurance as a contract of indemnity as opposed to any relation of contract or privity between insurers. *Northwestern Mutual Ins. Co. v. Farmers' Ins. Group*, 76 Cal.App.3d 1031, 1050, 143 Cal.Rptr. 415 (1978) (citing *Offer v. Superior Court*, 194 Cal. 114, 118, 228 P. 11 (1924)).

■ Nor is there any requirement that the insured itself demonstrate damages in order for its insurer to pursue by way of subrogation expenses it incurred on the insured's behalf. In *Cleveland*, like the present matter, subcontractor agreements entered into with the general contractor, Webcor, agreed to indemnify Webcor for any liability arising out of the subcontractors' construction operations. Frisby, an employee of one of the subcontractors, Delta, was injured when an employee of another subcontractor, Cleveland, was moving debris at the construction site. Cleveland failed to procure the liability insurance it was obligated to maintain pursuant to its agreement with Webcor and Cleveland rejected Webcor's tender of its defense and indemnification in the resulting lawsuit. Webcor's general liability carrier, Interstate, subsequently accepted the tender and funded both the defense and settlement of Frisby's lawsuit. Webcor then instituted a complaint in subrogation against Cleveland for breach of contract. In response to that action, Cleveland made a number of arguments, including a claim that because Interstate's insured, Webcor, had been fully compensated by Interstate, Webcor had no damages to which Interstate could be subrogated.

The *Cleveland* court rejected that argument on grounds that Webcor's damages for subrogation purposes were measured by whether Webcor would have had a viable claim against Cleveland "had it not been compensated for its loss by Interstate." *Cleveland*, 182 Cal.App.4th at 36, 105 Cal.Rptr.3d 606. As the court stated: "Cleveland's insistence that Webcor suffered no loss because Interstate paid Frisby, and Interstate therefore suffered no loss because it stands in the shoes of its insured, is circular and erroneous." *Id.* at 35 n. 3, 105 Cal.Rptr.3d 606.

In *Northwestern Mutual Ins. Co. v. Farmers' Ins. Exch.*, the court similarly observed that it "is not a prerequisite to equitable subrogation that the subrogor [here FOF and FPI] suffered actual loss; it is required only that [they] would have suffered loss had the subrogee [here PSMIC] not discharged the liability or paid the loss." 76 Cal.App.3d at 1044, 143 Cal.Rptr. 415.

The reasoning applied by *Cleveland* and *Northwestern* is equally applicable to the present matter: PSMIC has stated a viable claim for breach of contract by way of equitable indemnity. Consequently, LSIC's motion to dismiss that cause of action for failure to state a viable claim is denied. Defendant's authority in advocating a contrary conclusion is inapposite. In *Maryland Casualty v. Nationwide Mutual Ins. Co.*, 81 Cal.App.4th 1082, 97 Cal. Rptr.2d 374 (2000), for example, the court found equitable subrogation unavailable, but only because both carriers remained primarily liable on at least some part of the claimed loss. In *Maryland*, the subcontractors' policy covered the general contractors' negligence only insofar as the general's liability was derivative to that of the subcontractor. The general contractor's policy, on the other hand, extended to its own negligence, and the claims being

asserted in Maryland, unlike the present matter, extended to the general contractor's own negligence. *Maryland Casualty*, 81 Cal.App.4th at 1090–91, 97 Cal. Rptr.2d 374. Similarly, the court in *American States Ins. Co. v. National Fire Ins. Co. of Hartford*, 202 Cal.App.4th 692, 135 Cal.Rptr.3d 177 disallowed one carrier's subrogation claim where both carriers had issued general liability policies over different time periods. In that instance, where progressive damage was alleged spanning several policy periods, each carrier was subject to liability on a primary basis for the full extent of liability, not just for that part of the damage that occurred during any particular policy period. Again, unlike the present matter, this means that a primary/excess situation for which equitable subrogation could be asserted was not present.

■ Finally, Defendant's attempt to defeat equitable subrogation for Plaintiff's claims for defense and indemnification costs, on grounds that the circumstances of the present matter do not involve "true" primary/excess policies, is also misguided. In essence, Defendant asserts that even though it denominated its own policy as primary, the fact that the PSMIC policy was not specifically written as a policy of excess insurance should preclude subrogation. In *Northwestern Mutual Ins. Co. v. Farmers' Ins. Exch.*, 76 Cal.App.3d 1031, 143 Cal.Rptr. 415 (1978), however, the court rejected that argument. There, the defendant argued that because both policies were intended at their inception to provide primary insurance, it would be inequitable to shift the entire burden of defense and indemnification on either carrier so as to permit equitable subrogation. The Northwestern court found that this purported distinction made no difference and dictated no differing result. *Id.* at 1047, 143 Cal.Rptr. 415.

## C. Breach of the Covenant of Good Faith and Fair Dealing

■ In addition to the right to sue an insurer for breach of contract, if any insurer acts unreasonably and without proper cause in refusing to provide a defense and in either delaying of failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing. *Emerald Bay Community Assoc. v. Golden Eagle Ins. Corp.*, 130 Cal.App.4th 1078, 1093, 31 Cal.Rptr.3d 43 (2005) (citing *Crisci v. Security Ins. Co.*, 66 Cal.2d 425, 433, 58 Cal.Rptr. 13, 426 P.2d 173 (1967)). Courts have reasoned that because insurance should provide security and peace of mind through protection from calamity, a covenant that the insurer will not frustrate those expectations is imposed on insurers to encourage them to promptly process and pay claims. This is a special and heightened implied duty to act in good faith that is imposed by law on insurers and made enforceable in tort. *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1148, 271 Cal.Rptr. 246 (1990).

In moving to dismiss Plaintiff's Third Cause of Action, which alleges breach of the implied covenant of good faith and fair dealing, Defendants argue that in the absence of an underlying contractual relationship between LSIC and PSMIC, no implied covenant can attach. Defendants further contend that even if an implied covenant is present, in the absence of any damages to the insureds, FOF and FPI, PSMIC cannot state a viable claim in any event.

■ Both of these arguments are misplaced. First, because Plaintiff's implied covenant claim, like its breach of contract cause of action, is rooted in equitable subrogation, as explained above, privity of contract is not necessary since subrogation

looks to the nature of insurance as a contract of indemnity as opposed to any relation of contract or privity between insurers. *Northwestern Mutual Ins. Co. v. Farmers' Ins. Group*, 76 Cal.App.3d at 1050, 143 Cal.Rptr. 415 (citing *Offer*, 194 Cal. at 118, 228 P. 11). In addition, even if some contractual connection were required, since FOF and FPI were specifically named as additional insureds under policy, they qualify, at the very least, as third-party beneficiaries of the policy. *Northwestern Mutual*, 76 Cal.App.3d at 1042, 143 Cal.Rptr. 415. As such, FOF and FPI may enforce promises for their benefit, including the insurer's obligation to act in good faith with respect to claims asserted against them. *Id.* Moreover, and in any event, as the *Northwestern* court pointed out, under equitable subrogation, "the duty owed an excess carrier is identical to that owed by the insured." *Id.* at 1045, 143 Cal.Rptr. 415 (citing *Peter v. Travelers Ins. Co.*, 375 F.Supp. 1347, 1350–51 (C.D.Cal.1974)).

Defendants' second argument, that the insureds suffered no loss to which an insurer like PSMIC can be subrogated, has also been rejected in the preceding section of this Order. There is no requirement that the insured itself demonstrate its own damages in order for its insured to pursue by way of subrogation expenses it incurred on the insured's behalf. *Cleveland*, 182 Cal.App.4th at 35–36, 105 Cal.Rptr.3d 606. This allows an excess insurer like PSMIC to sue the primary insurer in subrogation for bad faith failure to protect the insured's interests. *Northwestern Mutual*, 76 Cal.App.3d at 1040, 143 Cal.Rptr. 415.

The cases relied on by Defendant in urging this Court to make a contrary conclusion are distinguishable. While Defendant cites language in *Emerald Bay*, to support its argument that an insured must sustain actual damages in order to state a

viable claim for breach of the implied covenant (130 Cal.App.4th at 1092–93, 31 Cal. Rptr.3d 43), the plaintiff in *Emerald Bay* was the insured itself, not an excess insurer seeking equitable subrogation for damages the insured would have suffered had the excess carrier not stepped in and provided a defense and indemnification. Additionally, while *Gulf Ins. Co. v. TIG Ins. Co.*, 86 Cal.App.4th 422, 103 Cal.Rptr.2d 305 (2001) did deal with a potential equitable subrogation claim, it did so in the context of a surety rather than an excess insurer, and the court noted that the surety's performance was not a liability policy and was not even "intended to cover the type of damage" done to the injured party. *Id.* at 427, 103 Cal.Rptr.2d 305. Gulf noted the dearth of any authority supporting the proposition that a surety "may bring a bad faith action against a general liability carrier." *Id.* at 429, 103 Cal.Rptr.2d 305. That does not mean, however, that a breach of the covenant claim is not available between a primary and excess carrier as authorized by *Cleveland* and *Northwestern Mutual*.

### D. Declaratory Relief

In addition to its substantive claims for breach of contract and for breach of the covenant of good faith and fair dealing as discussed above, Plaintiff also purports to state a cause of action for declaratory relief, arguing the existence of an actual controversy "between Plaintiff and Defendants concerning their respective rights and obligations. . . ." Compl., p. 8, ¶ 28. Plaintiff then proceeds to more specifically identify that controversy as concerning which party "owed FOF and RPI a defense and indemnity in the Underlining Action." *Id.* Finally, the Complaint, as well as Plaintiff's opposition to the instant motion, make it clear that defense and indemnity costs have already been paid by PSMIC on behalf of both

FOF and FPI, with PSMIC's costs to fund the settlement alone totaling some $50,000. Compl. ¶ 22, Pl.'s Opp'n, 4:25–26. PSMIC's defense and indemnifications are therefore liquidated in nature.

As Defendant points out, declaratory relief "operates prospectively to declare future rights, rather than to redress past wrongs." *Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan,* 150 Cal.App.4th 1487, 1497, 59 Cal.Rptr.3d 587 (2007) (citing *Babb v. Superior Court,* 3 Cal.3d 841, 848, 92 Cal. Rptr. 179, 479 P.2d 379 (1971)); *see also Travers v. Louden,* 254 Cal.App.2d 926, 931, 62 Cal.Rptr. 654 (1967). If "a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim." *Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan,* 150 Cal.App.4th at 1497, 59 Cal. Rptr.3d 587 (2007); *Gafcon, Inc. v. Ponsor & Assocs.,* 98 Cal.App.4th 1388, 1404, 120 Cal.Rptr.2d 392 (2002). This is because declaratory relief is intended to offer guidance in shaping future conduct so as to avoid breach of a party's obligations. *Britz Fertilizers, Inc. v. Bayer Corp.,* 665 F.Supp.2d 1142, 1173 (E.D.Cal.2009). If that conduct has already matured, no such opportunity is present. Consequently, where a party can allege a substantive cause of action, a declaratory relief claim should not be used as a superfluous "second cause of action for the determination of identical issues" subsumed within the first. *Hood v. Superior Court,* 33 Cal. App.4th 319, 325, 39 Cal.Rptr.2d 296 (1995). Here, in seeking declaratory relief, Plaintiff is not requesting the court's guidance to shape its defense and indemnification obligations in the future. To the contrary, the underlying case has been settled by payment of a fixed sum and defense costs have been expended. Plain-

tiff's remedy, then, is through damages as a result of those expenditures and Plaintiff has stated additional causes of action for those damages in its Complaint. As such, the cause of action for declaratory relief is superfluous and will be dismissed.

### E. Punitive Damages

Contending that punitive damages are not assignable, Defendant argues that such damages ought to be stricken in their entirety in the event Plaintiff's qualifying claim for breach of the covenant of good faith and fair dealing is not dismissed (which the Court has already declined to do). Defendant's argument fails.

Defendant properly cites case law finding that punitive damages are not assignable under California law. *See, e.g., Essex v. Five Star Dye House, Inc.,* 38 Cal.4th 1252, 1263, 45 Cal.Rptr.3d 362, 137 P.3d 192 (2006); *Murphy v. Allstate Ins. Co.,* 17 Cal.3d 937, 942, 132 Cal.Rptr. 424, 553 P.2d 584 (1976). In arguing that Plaintiff's damage request should be stricken on that basis, Defendant points to authority finding that nonassignable *claims* are not subject to subrogation absent express statutory authorization. *Fireman's Fund Ins. Co. v. McDonald, Hecht & Solberg,* 30 Cal.App.4th 1373, 1388, 36 Cal.Rptr.2d 424 (1994). Defendant therefore requests that punitive damage "claims" be stricken accordingly.

Despite Defendant's attempt to equate Plaintiff's request for punitive damages with a claim that cannot be assigned pursuant to *Fireman's Fund,* a "claim" is not synonymous with "damage" flowing from that claim. Under California law, for example, punitive damages are treated as a remedy that may attach to a particular claim as opposed to a separate cause of action. *See, e.g., Hilliard v. A.H. Robins Co.,* 148 Cal.App.3d 374, 391, 196 Cal.Rptr. 117 (1983). In discussing the

fact that nonassignable *claims* are not subject to subrogation, the *Fireman's Fund* case clearly referred to a cause of action since it proceeded to discuss the nonassignability of a legal malpractice claim, which clearly is a substantive cause of action as opposed to an attendant remedy like punitive damages. *Fireman's Fund Ins. Co.*, 30 Cal.App.4th at 1384, 36 Cal. Rptr.2d 424. The fact that nonassignable claims are not subject to subrogation, then, does not mean a claim properly subject to subrogation cannot properly include punitive damages if those damages are available to the insured, and Defendant cites no authority to the contrary. Indeed, as discussed above, an excess insurer, standing in the shoes of the insured, can recover by way of equitable subrogation all claims against the primary carrier that the insured could have asserted. *See Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal.App.4th 1586, 1600–01, 26 Cal.Rptr.2d 762 (1994). Those claims can include punitive damages in appropriate circumstances. *See, e.g., Continental Cas. Co. v. Royal Ins. Co. of America*, 219 Cal.App.3d 111, 125 n. 6, 268 Cal.Rptr. 193 (1990). Defendant's motion to strike the punitive damages allegations of Plaintiff's Complaint therefore fails.

## CONCLUSION

For all the reasons set forth above, Defendant's Motion to Dismiss and Strike Portions of Plaintiff's Complaint (ECF No. 7) is DENIED in part and GRANTED in part. Defendant's requests that Plaintiff's Second and Third Causes of Action, for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing, respectively, be dismissed for failure to state a viable claim under Rule 12(b)(6) are DENIED. Plaintiff's request that punitive damages sought in association with the Third Cause of Action be stricken under Rule 12(f) is also DENIED. Defen-

dant's request for dismissal as to the First Cause of Action, for Declaratory Relief, is GRANTED on grounds that there is no prospective controversy, upon which such relief would be proper, as opposed to prior alleged wrongdoing as alleged in Plaintiff's other two substantive claims for breach of contract and breach of the covenant.

Because the Court does not believe that the deficiencies of Plaintiff's declaratory relief claim can be rectified through amendment, no leave to amend that claim will be permitted.

IT IS SO ORDERED.